Harold S. Lutsko and Lucille L. Lutsko v. Commissioner.
Lutsko v. Commissioner
Docket No. 1153-67.
United States Tax Court
T.C. Memo 1969-78; 1969 Tax Ct. Memo LEXIS 221; 28 T.C.M. (CCH) 443; T.C.M. (RIA) 69078; April 17, 1969, Filed James J. Frank, for the petitioners. [1] Joseph M. Abele, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined income tax deficiencies and additions to tax against the petitioners as follows: Year
Deficiency
Addition to Tax [2] Sec. 6653(b)
1961
$ 3,763.30
$1,967.85
1962
6,105.36
4,173.86
1963
12,694.61
*222 The parties have made certain concessions which can be given effect in Rule 50 computation. Petitioners alleged in their petition that they are entitled to an additional deduction for a dependent for the year 1963, but they have introduced no evidence. Therefore, we consider the issue abandoned. The two issues remaining for decision are: (1) Whether petitioners failed to report amounts received by them during 1961, 1962, and 1963, resulting in understatements of taxable income for such years; and (2) whether a part of the underpayment of tax in each of the years was due to fraud with intent to evade tax. Findings of Fact Some of the facts have been stipulated and are found accordingly. Harold S. and Lucille L. Lutsko (herein sometimes referred to as petitioners) are husband and wife who resided in Pittsburgh, Pennsylvania, at the time the petition was filed herein. They filed untimely joint Federal income tax returns for the years 1961 and 1962 on December 12, 1963, and for the year 1963 on September 24, 1965, with the district director of internal revenue at Pittsburgh. The tax returns filed by petitioners were prepared on the cash receipts and disbursements method of reporting *223 income. During the years 1961, 1962, and 1963, and for a number of years prior thereto, Harold S. Lutsko (herein called petitioner) had been engaged in the business of selling and installing gas furnaces, hot water heaters, and air precipitators. At times he was an employee of companies owned by others, and at other times he conducted business as an owner-operator of various heating companies in the Pittsburgh area. During the year 1961, and until the middle of December, petitioner owned and operated the United States All Steel Furnace Company (herein called All Steel), a proprietorship engaged principally in the sale, installation, and repair of heating equipment. In 1959, petitioner had employed Maurice Loevner (herein called Loevner), a certified public accountant and member of the firm of Estner and Loevner, to maintain the necessary financial records of the business. Loevner had also prepared petitioner's Federal income tax return for the year 1959. To record the financial transactions of All Steel, Loevner prepared a sales journal and a cash disbursements journal. In order to get the data for the journals, the accountant made monthly trips to petitioner's office where petitioner *224 orally read off the sales figures to him from an installation book in which, petitioner alleged, he had recorded all the completed jobs. The accountant at the same time would record the business disbursements from cancelled checks which petitioner gave him. Loevner kept the books of All Steel in this manner until sometime in September 1961 when his employment as the accountant for petitioner was terminated. Petitioner, however, continued to conduct business through 445 All Steel until the middle of December of that year. The sales made during the latter part of 1961 were not recorded in the sales journal. About the 15th of December 1961, petitioner left Pittsburgh and went to Muskegon, Michigan, where he was employed by Holland Furnace Company as a salesman. In 1961, petitioner received wages of $200 from Holland which were not reported on his income tax return for that year. He remained an employee of Holland until April 1962, at which time he returned to Pittsburgh. After returning to Pittsburgh, petitioner began working for Champion Furnace Company as sales manager. He worked for Champion until September 1962. He then formed and operated Cavalier Heating Service (herein *225 called Cavalier). Champion paid petitioner wages of $16,273 for 1962, but petitioner reported only $16,000 on his income tax return for that year. In April 1963, petitioner again retained Loevner to prepare his 1962 Federal income tax return. Since petitioner had failed to keep any books or records with respect to the financial transactions of Cavalier for the year 1962, it was necessary for Loevner to obtain the information required to prepare petitioner's 1962 return from Cavalier's bank statements and cancelled checks which had been drawn on its business checking account at the Brookline Savings and Trust Company. During petitioner's discussions with Loevner in April 1963, concerning the preparation of the 1962 return, he informed Loevner that he had not filed a Federal income tax return for the year 1961. Loevner advised petitioner that he should file a return for 1961. Martin Estner (herein called Estner), an associate of Loevner, in answering the question on petitioner's 1962 income tax return, "Did you file a return last year?" checked the "no" block because of petitioner's statement to Loevner. Petitioners' 1962 joint Federal income tax return was completed and mailed to *226 them about April 10, 1963, prior to its due date. However, petitioners failed to file it on time with the district director of internal revenue. Subsequent to the formation of Cavalier, petitioner at sometime during the early part of 1963 formed and operated the Anchor Heating Service, the Viking Heating Service, the Lancer Heating Service, and the Atlas Heating Service. All the companies except Atlas, which was located in Columbus, Ohio, were in or around the Pittsburgh area. Shortly after preparing petitioners' 1962 return, the accountants were retained to establish and maintain the books and accounts for the various companies. Loevner instituted basically the same method used in 1961, i.e., petitioner would orally give the sales to him and the disbursements were recorded from the cancelled checks. During this period the petitioner gave Loevner cancelled checks which were recorded in the initial 1963 cash disbursements journal. Petitioner filed untimely income tax returns for the years 1961 and 1962. Petitioner made no effort to have a return for the year 1961 prepared for him until after he received a letter from the Internal Revenue Service dated November 6, 1963, inquiring *227 whether he had filed an income tax return for the year 1962. Because petitioner failed to respond to the first letter, respondent's agents sent a second letter of inquiry on November 29, 1963. At sometime between November 6 and November 29, 1963, petitioner requested Loevner to prepare his 1961 Federal income tax return. On December 4, 1963, petitioner in response to the letter of November 29, 1963, appeared in respondent's office of the Intelligence Division with joint Federal income tax returns for the years 1961 and 1962. These returns, however, were not accepted for filing at that time. They were subsequently mailed to the district director of internal revenue at Pittsburgh and were received on December 12, 1963. At the December 4th conference, petitioner told respondent's agent that he was unaware that his 1961 tax return had not been filed until he received their letter of November 29, 1963. Petitioner actually knew that he had filed no return for the year 1961 as early as April 1963. He further stated that while his 1962 tax return had been timely prepared by his accountants, he had not filed it because he did not have sufficient funds to pay the tax ($2,068.28) shown as *228 due on the return. Petitioner executed a sworn affidavit to this effect. On April 15, 1963, the date petitioners' 1962 return was due, bank statements show that petitioners had funds in various banks, as follows: 446 Account Name
Bank
Amount
Cavalier Heating Service
Mellon National Bank
$4,797.23
Anchor Heating Service
Mellon National Bank
2,554.35
Cavalier Heating Service
Brookline Bank
1,420.35
Lucille L. Lutsko
Brookline Bank 32.96
$8,804.89
In response to an inquiry from respondent's agent, petitioner, orally and in a sworn affidavit, stated that he had filed income tax returns for all prior years. A search of the files of the Internal Revenue Service indicated that there was no record of petitioner having filed Federal income tax returns for the years 1952, 1953, 1956, and 1958. Prior to April 15, 1964, the accountants were requested by petitioner to prepare his 1963 Federal income tax return. To prepare the return, it was necessary for the accountants to make up a preliminary profit and loss statement for all the businesses which petitioner operated. The profit and loss statement, based on the data contained in the books and accounts *229 which the accountants had established and maintained during 1963, showed a profit of approximately $75,000. The accountants and petitioner thought that this profit figure of $75,000 was totally unreasonable, and that additional time and information was required. Because the due date for filing was imminent, the accountants requested an extension of time for filing petitioners' 1963 return. In the application for extension, the following reason was given for the request: Investigation for prior years returns delayed gathering of information as books were in possession of Internal Revenue and closing of offices has resulted in misplacement of invoices paid by cash. The application also contained the statement that petitioners had timely filed a Federal income tax return for 1962. Petitioner signed and filed the application. The request was granted extending the time for filing petitioner's 1963 income tax return until June 15, 1964. In an effort to obtain the additional information needed to prepare petitioner's return, the accountants arranged to meet with him and his attorney, Joseph Swartz, at his office around the end of May. On the specified day, both Loevner and Estner went *230 to petitioner's office. After waiting for "a few hours," in which time neither petitioner nor Swartz showed up, they left. Petitioner did not advise the accountants as to his reason for failing to keep his appointment with them, and he did not supply them with the information they needed to prepare his 1963 return. Since the due date under the first extension was drawing near, Estner prepared an application requesting another extension of time. Petitioner signed and filed this application. The request was granted extending the time for filing the return until August 15, 1964. Petitioner did not contact the accountants during the period covered by the second extension. Because petitioner failed to cooperate with them, the accountants, after obtaining two extensions, did nothing with respect to the preparation of petitioner's 1963 return. They did not see or hear from him until April 1965, when Swartz contacted them to ask them to prepare a 1963 tax return. Since April was a very busy month for them, they told Swartz they could not assist him at that time and he would have to see them at some later date. Subsequently, in May or June 1965, the accountants met with Swartz, who again *231 requested them to prepare petitioner's 1963 return. At that time the accountants prepared another general ledger of the income and disbursements for all of petitioner's companies for the year 1963. On the basis of the information contained in this new ledger, they prepared a "work sheet" on a 1963 Federal income tax return, Form 1040, for purposes of a conference with petitioner and Swartz. Three copies were made of this "work sheet." At the conference the accountants were instructed by Swartz to do further testing of the information contained in the "work sheet." The accountants took back the original and one copy of the "work sheet," and Swartz retained a copy thereof. After completing the additional testing, the accountants did not want the "work sheet" filed as petitioner's 1963 income tax return because, based on the information they had, it did not fairly or accurately reflect his income and expenses for that year. For this reason, they asked Swartz to return the copy of the "work sheet" 447 which he had retained. He did not do so. Instead the "work sheet" was filed by petitioners on September 24, 1965, as their 1963 joint Federal income tax return. During the audit *232 of his books and records by respondent's agents, petitioner failed to submit all the original conditional sales contracts for sales which his various companies had made during the years 1961, 1962, and 1963. During such years, the petitioner failed to disclose all the sales made by or through his businesses to his accountants, and, as a result, his books and records were inadequate and incomplete. Petitioner was indicted and convicted in Allegheny County, Pennsylvania, for the crimes of conspiracy to cheat and defraud, attempted false pretenses, and false pretenses. These crimes were all related to his activities of selling and servicing furnaces. Upon a plea of guilty, petitioner was convicted of willful failure to file a Federal income tax return for the year 1962 in the United States District Court for the Western District of Pennsylvania. Petitioner understated adjusted gross income on the Federal income tax returns filed for the taxable years 1961, 1962, and 1963, as follows: Year
Respondent's Computation
Income Reported
Understate- ment of Income
1961
$20,123.38
$ 3,831.27
$ 16,292.11
1962
31,575.73
15,355.06
16,220.67
1963
40,028.97
11,831.08
28,197.89
*233 Petitioner reported gross receipts of $28,049.98, $61,317.25, and $300,118.35, respectively, for such years. [3]
The substantial increases in gross receipts are attributable to the sales tactics used by petitioner and his salesmen. Petitioner employed a scare-selling campaign. Usually, petitioner, or one of his salesmen, would gain entry to a home to look at the furnace by such gimmicks as offering to clean the furnace and air ducts at extremely low fees. While inspecting the furnace or prior to cleaning it, petitioner or one of his employees would inform the owner that the heating system was faulty or defective and that there was danger of carbon monoxide which might cause the death of the occupants of the house. This was generally told to the owner only after the furnace had been taken apart. Thus, if the owner refused to purchase a new furnace from petitioner, his furnace was left disassembled, often in the dead of winter. The people confronted with such a scare tactic generally purchased a new furnace *234 from petitioner. While the sales price petitioner charged was around $1,000, the most expensive furnace purchased by petitioner had a wholesale price of $208 less a 10 percent discount. With respect to the year 1961, petitioner omitted sales, as shown in the following schedule, from All Steel's cash receipts journal and his 1961 income tax return: Customer
Amount
Witherow, K.C.
$ 10.00
Migale, Joseph
127.00
Morehouse, Laurence C.
52.00
Kemp, Catherine M.
75.00
Schwab, Bessie
1,196.00
Kasperski, Josephine
1,085.00
Herrick, James G.
20.00 Brookline Savings and Trust Company receipts received as a result of discounting notes of the following persons: Warren, Anna M.
$1,000.00
Vrachich, Frank
1,100.00
Ford, Matthew
1,176.00
Warmus, Theodore
1,200.00
Walsh, Gertrude 900.00
5,376.00
Total $7,941.00 Petitioner received wages of $200 from Holland Furnace Company in 1961 which he did not report on his 1961 income tax return. Petitioner is not entitled to a deduction for unsubstantiated purchases claimed on his 1961 income tax return in the amount of $8,151.11. Petitioner is entitled to itemized deductions of $1,161.01 *235 and dependency exemptions of $3,600 for the year 1961. With respect to the year 1962, the following sales were not deposited to Cavalier's checking account at the Brookline Savings and Trust and were omitted from petitioners' 1962 Federal joint income tax return: Customer
Amount
Lynch, Joseph
$ 165.80
Holl, Hannah
245.88
Sailley, Catherine H.
1,168.00
Moeslein, Albert E.
440.00 Brookline Savings and Trust Company Receipts received as a result of discounting notes of the following persons: Williams, Juniata
$1,188.00
Gillen, Frank P.
1,090.00
Maier, Bernard
1,100.00
Gorman, Abraham 1,195.00
4,573.00
Total $6,592.68 448 Petitioner received capital gain income of $34.09 and one-half of such amount is properly includable in his income for the year 1962. Petitioner incorrectly included an amount of accrued purchases in the cost of goods sold deducted on his 1962 return; petitioner and Cavalier were on the cash receipts and disbursements method of accounting; petitioner did not receive permission from respondent to change his method of accounting; and petitioner is not entitled to deduct the accrued purchases in 1962. *236 Petitioner is not entitled to a deduction of any commission expenses alleged to have been paid during his employment with Champion Furnace Company in 1962. Petitioner failed to report $273 which he received in wages from Champion Furnace Company in 1962. Petitioner is not entitled to claimed itemized deductions in excess of $1,642.22 for the year 1962. Petitioner is entitled to a deduction for a loss of $146.90 on the sale of assets of All Steel in the year 1962. With respect to the year 1963, the proceeds from many sales or portions thereof were omitted from the first cash receipts journal, and a number of these sales or portions thereof were also omitted from the companies' second cash receipts journal and petitioners' income tax return for such year. The omissions are as follows: Customer
Amount
Hubert F. Benson
$ 490.00
Daniel O. Mellinger
168.00
Catherine H. Sailley
300.00
Carmela Gioia
200.00
Edward L. Helgerman
303.00
John A. Miller
144.00
Marian Rodgers
375.00
Emerick E. Marmarelli
178.00
Raymond Margele
383.00
M. Weimer
750.00
Peter J. Wray
1,139.00
Joseph Gallow
964.00
Richard Dugan
530.00
Lester Strub
450.00
Caretta Pasquale
120.00
Andrew DeSensi 1,100.00
Total $7,594.00
*237 Petitioner received a dividend of $1.74 and a capital gain of $7.14 which were not included in his taxable income for the year 1963. Petitioner is not entitled to itemized deductions in excess of $1,252.69 for the year 1963. Ultimate Findings For each of the years 1961, 1962, and 1963 a part of the underpayment of tax was due to fraud with intent to evade tax, and the income tax returns of petitioners for each of those years were false and fraudulent with intent to evade and defeat tax. Opinion Respondent determined deficiencies in the income taxes of petitioners for each of the years in question by showing the omission of specific items of income received by them and by disallowing certain claimed deductions. Petitioners have the burden of over-coming the presumptive correctness of such determination. Welch v. Helvering, 290 U.S. 111 (1933). Petitioners have completely failed to carry their burden of proving errors therein. We are satisfied that the items determined to have been specifically omitted by petitioners and the deductions disallowed were carefully and meticulously documented and explained by respondent. Petitioner apparently takes the position *238 that the differences between his income as determined by respondent and as reported on his returns for the years 1961, 1962, and 1963 are attributable to unclaimed deductions to which he was entitled. In an effort to explain the differences, he testified that - The difference from what they show on my income and the amount of money that is shown as not reported, I would have to believe is the amounts of moneys that have been paid to our wholesalers in the form of cash, because at that time in 1961, again, my credit was reaching the point of no return and the wholesalers did not feel like they would accept checks, so they wanted cash. Petitioner offered no credible evidence to support his position, such as invoices or bills of sales. Nor did he give any plausible explanation for the nonexistence of such evidence. In view of all the facts and circumstances contained in this record and from our observation of petitioner's demeanor at the trial, we find his testimony unreliable and unbelievable. Having established that deficiencies in income taxes existed for the years 1961, 1962, and 1963, respondent does not have to show that petitioner took all allowable deductions. Where, as *239 here, the petitioner claims that no tax would be due if he were allowed to take additional deductions not 449 reflected in his income tax returns which would operate to reduce or eliminate the unreported income shown to be due by respondent, the burden of persuasion rests with the petitioner. Sidney Kreps, 42 T.C. 660, 666-667 (1964), affd. 351 F. 2d 1 (C.A. 2, 1965). Petitioner has failed to meet that burden. Next we turn to the question of whether a part of the underpayment of tax for each year was due to fraud with intent to evade tax under section 6653(b). On this issue respondent has the burden of proving fraud by clear and convincing evidence. Section 7454(a); Arlette Coat Co., 14 T.C. 751 (1950). Respondent must prove that fraud exists for each year involved before the addition to tax for that year can be sustained. Harry Gleis, 24 T.C. 941 (1955). Fraud must be determined from all the facts and circumstances of each particular case. In our judgment the respondent has presented clear and convincing evidence of fraud in this case. Seldom can fraud be established by direct proof. It is usually found by looking at *240 all of the circumstances surrounding the taxpayer's conduct and is to be adduced, as any other fact, from the evidence and inferences properly to be drawn therefrom. M. Rea Gano, 19 B.T.A. 518, 533 (1930). A strong indicia of fraudulent intent is the omission or understatement of substantial amounts of income. Particularly is this true where the omission or understatement of income follows a pattern over a number of years. Arlette Coat Co., supra; Jacob C. Ehrlich, 31 T.C. 536 (1958); Schwarzkopf v. Commissioner,, 246 F. 2d 731, 734 (C.A. 3, 1957); and Holland v. United States, 348 U.S. 121 (1954). The uncontroverted evidence in this case establishes that petitioner consistently and substantially understated his income for each of the years in issue. Respondent, by direct proof, has shown that petitioner omitted business receipts of $7,941 in 1961, $6,592.68 in 1962, and $7,594 in 1963. Petitioner's attempted explanation for his failure to report these amounts is patently weak. Moreover, he stipulated that the $200 in wages received from Holland Furnace Company and the $273 in wages received from Champion Furnace Company *241 were not reported on his 1961 and 1962 returns; yet he gave no explanation for such omissions. In Merritt v. Commissioner, 301 F. 2d 484, 487 (C.A. 5, 1962), a case involving somewhat similar facts, the Court of Appeals said: Consistent and substantial understatement of income is by itself strong evidence of fraud. This proof, coupled with the showing that the records were both incomplete and inaccurate, and that petitioner did not supply the bookkeeper with all the data necessary for maintaining complete and accurate records, is enough to warrant the Tax Court in finding fraud. Petitioner intentionally withheld data from his accountants so that sales would not appear in the books and records of his various companies, knowing that the Federal income tax returns for the years in question would be filed on the basis of the inaccurate records. This practice of concealing sales from his accountants rendered petitioner's records incomplete and inaccurate. This manner of keeping business records and reporting to the accountants who prepared his income tax returns concealed taxable income and was conduct evidencing his intention to file false and fraudulent returns. Jacob D. Farber, 43 T.C. 407, 420 (1965); *242 Fred Draper, 32 T.C. 545, 562 (1959). The facts herein are indeed similar to those in the Draper case where the taxpayer also knowingly kept false books and knowingly filed income tax returns prepared on the basis of such false books. It is significant that for each year the petitioner failed to file a timely return. It is also significant that he filed the returns for 1961 and 1962 only after respondent had begun his investigation and then, apparently, only out of his fear of being caught. In addition, petitioner pleaded guilty and was convicted of willful failure to file a Federal income tax return for the taxable year 1962. And he offered no explanation for his failure to timely file returns for the years 1961 and 1963. While it is true that the mere failure to file an income tax return, without more, is generally regarded as insufficient to support a finding of fraud under section 6653(b), it has been held that the willful failure to file, not satisfactorily explained, may constitute sufficient evidence of fraud to justify the imposition of the 50 percent addition to tax. Charles F. Bennett, 30 T.C. 114 (1958); Fred N. Acken, 26 T.C. 107 (1956). *243 All in all, petitioner's actions convince us that he had little regard for the filing requirement, which, of course, is an indication of his fraudulent purpose. 450 Not only was the 1963 return untimely filed, but it was filed over the accountants' protest because they were uncertain as to its accuracy. This fact, considered in light of the other circumstances, is further evidence that, as to 1963, petitioner intentionally filed a false and fraudulent return. Finally, petitioner's course of conduct during the investigation is cogent evidence of fraud. During the investigation the petitioner failed to cooperate with respondent's agents by not making available to them certain conditional sales contracts contained in the records of the various companies. Jacob D. Farber, supra.Petitioner's sworn statement made to respondent's agents in December 1963 that he was unaware that he had not filed his 1961 income tax return has been shown to be false. Similarly, respondent has revealed the falsity of petitioner's sworn statement that his 1962 income tax return was not filed because he did not have the money to pay the tax liability reported thereon. Accordingly, on *244 this record, we conclude that respondent has proved fraud by clear and convincing evidence. Cf. Webb v. Commissioner, 394 F. 2d 366 (C.A. 5, 1968). Petitioners are liable for the additions to tax under section 6653(b). To permit the necessary computations required by the parties to arrive at a decision reflecting the concessions made by them and the conclusions reached in this opinion, Decision will be entered under Rule 50. Footnotes
1. At the trial of this case petitioners appeared pro se. Mr. Frank entered his appearance on October 21, 1968. Three extensions of time for filing a brief on behalf of petitioners were granted. To date no brief has been filed.↩
2. All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated. The additions to tax were determined by respondent by taking 50 percent of the total tax due for the years in issue - not 50 percent of the deficiencies - because petitioners were delinquent in filing their returns for each of the years. Charles E. Bennett, 30 T.C. 114, 122-123↩ (1958).
3. In his notice of deficiency respondent determined that petitioner had gross receipts from his businesses of $35,990.98 in 1961, $67,541.73 in 1962, and $306,942.27 in 1963.↩